Signed: November 18, 2010

_____
EDWARD D. JELLEN
U.S. Bankruptcy Judge



UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | No. Case 09-70380 J |
| | Adv. No. 10-4029 AJ |
| EDUARDO A. VERGARA, | Chapter 7 |
|           Debtor.  / | |
| ARTURO MARTINEZ, | Date: 11/09/10 |
| | Time: 10:00 a.m. |
|           Plaintiff, | Ctrm: 215 |
| vs. | |
| EDUARDO A. VERGARA, | |
|           Defendant. / | |

## DECISION

By this adversary proceeding, plaintiff Arturo Martinez ("Martinez") seeks to render nondischargeable a debt he is owed by defendant Eduardo Vergara, the above debtor ("Vergara"). The court will enter judgment in favor of Vergara.

A. <u>Background</u>

In 2002, Vergara took over management responsibilities for a 13 unit building on MacArthur Boulevard in Oakland, California (the "Property") that Martinez had acquired the previous year.

Decision

Thereafter, Vergara and Martinez informally agreed that Martinez would sell Vergara a 20% interest in the Property. In April 2005, Vergara and Martinez discussed the possibility of Vergara purchasing the entire Property from Martinez. At the time of these discussions, the Property was in a state of disrepair. It was only partially rented out, and many of the tenants were engaging in illegal activity on the premises. Vergara's intent was to renovate and rehabilitate the Property and then refinance it.

The discussions between Vergara and Martinez resulted in the parties signing a handwritten term sheet dated April 2005 under which Vergara was to pay Martinez $450,000 for his equity in the Property, such payments to be made over a period of five years.

In late September 2005, Martinez and Vergara entered into a more formal purchase agreement, which provided that Vergara would purchase the Property for the sum of $910,000. The purchase agreement stated that it was "merely a memorial of a previous agreement with all terms the same dated April 1, 2005."

On October 17, 2005, Martinez and Vergara entered into an addendum to the purchase agreement providing for Martinez to carry back a note for $450,000, and for Vergara to assume all the debts on the Property, including mortgage payments, taxes, and insurance.

The addendum stated that Vergara would refinance the Property. If he did so within six months, Vergara was to pay $100,000 to Martinez immediately on the refinance, and then pay certain installment payments to Martinez. If, however, the refinance occurred after passage of the six month period, then payment of the

Decision 2

$100,000 was to be deferred according to an alternate payment schedule specified in the addendum. One additional addendum followed, which altered some of the payment terms.

On October 19, 2005, Martinez conveyed the Property to Vergara by grant deed. Vergara's purchase money debt to Martinez was unsecured.

In November 2006, Vergara refinanced the Property, and realized a substantial gain from the refinance transaction. Because the refinance occurred after passage of the six month period mentioned in the contract addendum, Vergara was not contractually required to make the immediate $100,000 payment, and he did not do so.

The parties agree that Vergara paid Martinez a total of $86,945 toward the purchase price. Vergara testified that he had also paid substantial sums for mortgage payments on the Property before he acquired title, and had also paid over $62,000 plus attorneys' fees to settle several lawsuits related to the Property. The parties disagree as to whether these expenditures by Vergara were to be credited against Vergara's debt to Martinez.

In any event, Vergara eventually lost the Property through foreclosure. On October 30, 2009, Vergara filed his voluntary petition herein under chapter 7 of the Bankruptcy Code. This adversary proceeding followed.

Martinez's complaint alleges that Vergara still owes him $450,000 consisting of the unpaid portion of the purchase price for the Property plus an unliquidated amount for rents that Martinez contends that Vergara absconded with, and that this debt is

Decision 3

nondischargeable pursuant to Bankruptcy Code § 523(a)(2)(A) (fraud), 523(a)(2)(B) (false financial statement), and 523(a)(4) (fiduciary fraud or defalcation).

B.  Discussion

At the conclusion of Martinez's case in chief, the court granted Vergara's motion pursuant to Fed. R. Civ. P. 52(c), applicable via Fed. R. Bankr. P. 7052, for judgment in his favor on Martinez's claims under Bankruptcy Code § 523(a)(2)(B)[1] and 523(a)(4).[2]

---

[1] Bankruptcy Code § 523(a)(2)(B) provides:
(a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt -
. . .
(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by -
. . .
(B) use of a statement in writing--

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive. . ..

[2] Bankruptcy Code § 523(a)(4) provides:
A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt -
. . .
(4) for fraud or defalcation while acting in a
(continued...)

Decision 4

nondischargeable pursuant to Bankruptcy Code § 523(a)(2)(A) (fraud), 523(a)(2)(B) (false financial statement), and 523(a)(4) (fiduciary fraud or defalcation).

B.  Discussion

At the conclusion of Martinez's case in chief, the court granted Vergara's motion pursuant to Fed. R. Civ. P. 52(c), applicable via Fed. R. Bankr. P. 7052, for judgment in his favor on Martinez's claims under Bankruptcy Code § 523(a)(2)(B)[1] and 523(a)(4).[2]

---

[1] Bankruptcy Code § 523(a)(2)(B) provides:
(a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt -
. . .
(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by -
. . .
(B) use of a statement in writing--

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive. . ..

[2] Bankruptcy Code § 523(a)(4) provides:
A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt -
. . .
(4) for fraud or defalcation while acting in a
(continued...)

Decision 4

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
1300 Clay Street (2d fl.)
Oakland, CA. 94612

Case: 10-04029  Doc# 30  Filed: 11/18/10  Entered: 11/18/10 14:11:14  Page 4 of 8

As to the former, the evidence failed to show that Vergara ever provided Martinez with any statement in writing respecting his financial condition.³

As to the latter, it is true that at the time of the purchase, Vergara was a licensed real estate broker, and a licensed attorney. It is also true that Martinez trusted him.

This, however, does not create a fiduciary relationship within the meaning of Bankruptcy Code § 523(a)(4). In their dealings, Vergara acted as a principal, not as a broker or attorney. A provision in the purchase agreement so stated.

In In re Baird, 114 B.R. 198 (9th Cir. BAP 1990), the Ninth Circuit Bankruptcy Appellate Panel took the occasion to explain the meaning of "fiduciary capacity" under Bankruptcy Code § 523(a)(4). The BAP explained:

> The meaning of 'fiduciary capacity' under section 523(a)(4) is a question of federal law, which has consistently limited this term to express or technical trust relationships. The broad general definition of a fiduciary relationship - one involving confidence, trust and good faith - is inapplicable in the dischargeability context. The debt alleged to be nondischargeable must arise from a breach of trust obligations imposed by law, separate and distinct from any breach of contract. In addition, the requisite trust relationship must exist prior to and without reference to the act of wrongdoing. This requirement eliminates constructive, resulting or implied trusts.

---

²(...continued)
   fiduciary capacity, embezzlement, or larceny.

³Indeed, Vergara never provided Martinez orally with any information about his financial condition, nor did Martinez ever request any such information.

Decision                                    5

Baird, 114 B.R. at 202 (internal citations omitted).

The evidence failed to show that Vergara was in a fiduciary relationship with Martinez.

As to Martinez's fraud claims, Bankruptcy Code § 523(a)(2)(A) provides: "A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt - . . . (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by - (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."

To prevail under § 523(a)(2)(A), a creditor must establish that: (1) the debtor made a representation, (2) with knowledge of its falsity, (3) with the intention and purpose of deceiving the creditor, (4) that the creditor justifiably relied on the representation, Field v. Mans, 516 U.S. 59, 116 S.Ct. 437 (1995)(justifiable reliance required), and (5) that the creditor sustained damage as the proximate result thereof. See In re Britton, 950 F.2d 602, 604 (9th Cir. 1991). The creditor must establish each of these elements by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 111 S.Ct. 654 (1991).

Here, the evidence failed to establish any fraud on the part of Vergara. The evidence did not establish or even suggest that Vergara made any misrepresentations to Martinez, or that he had any intent to deceive Martinez when he contracted to purchase the Property. Nor did the evidence show that Vergara misappropriated ///

Decision 6

any rents (or even show the amount of the monthly rents, if any, that the Property generated).

    Martinez argues that, during the period after the parties had entered into the purchase agreement, and prior to the transfer of title, Vergara had caused some mass evictions on the Property, thereby reducing the income the Property generated, and that the timing of these evictions evidences Vergara's fraudulent intent. Given the state of the Property and the unsatisfactory quality of its tenants, such evictions seem, if anything, to have been prudent, and are in no way indicative of any fraud on the part of Vergara.

C. <u>Conclusion</u>

    Martinez entered into what turned out to be an unwise bargain. He agreed to sell the Property to Vergara on an unsecured basis, leaving himself at risk when he surrendered title, and unprotected when Vergara obtained substantial sums out of the refinance. Unfortunately for Martinez, Bankruptcy Code § 523(a)(2)(A) does not provide a remedy for an unwise bargain. The court will therefore enter judgment in favor of Vergara.

**END OF ORDER**

Decision    7

Case: 10-04029   Doc# 30   Filed: 11/18/10   Entered: 11/18/10 14:11:14   Page 7 of 8

COURT SERVICE LIST

Michael Melchin, Esq.
Law Offices
1405 Huntington Avenue, Suite 202
S. San Francisco, CA 94080

Jeffrey A. Dito, Esq.
Valinoti & Dito, LLP
180 Montgomery Street, Suite 940
San Francisco, CA 94104

Decision                                    8